**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 23-cv-259

UNITED STATES OF AMERICA

      Plaintiff,

v.

CENTRAL TELECOM LONG DISTANCE, INC.,

      Defendant.

---

**COMPLAINT**

---

      Plaintiff, UNITED STATES OF AMERICA, alleges as follows:

**INTRODUCTION**

      1.      The United States of America brings this action against Defendant Central Telecom Long Distance, Inc. pursuant to section 504(a) of the Communications Act of 1934 ("Communications Act" or "Act"), 47 U.S.C. § 504(a), to recover a monetary forfeiture penalty assessed by the Federal Communications Commission ("FCC" or "Commission") on September 15, 2016.

**JURISDICTION AND VENUE**

      2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and 47 U.S.C. § 504(a).

      3.      Venue is proper in the District of Colorado pursuant to 28 U.S.C. §§ 1355(b), 1391(b), and 1395(a), and 47 U.S.C. § 504(a).

## PARTIES

4. Plaintiff is the United States of America.

5. Defendant is Central Telecom Long Distance, Inc., a Colorado corporation that maintains its principal operating office at 102 S. Tejon Street, Suite 1100, Colorado Springs, Colorado 80903. Defendant is a non-facilities-based interexchange carrier, which is a provider of long-distance telecommunications services that leases switching and lines from others. Defendant serves customers in multiple states, including Colorado.

## STATUTORY AND REGULATORY BACKGROUND

6. The FCC is an independent federal regulatory agency created by Congress to regulate interstate and foreign radio communications pursuant to the Communications Act, 47 U.S.C. § 151 *et seq.* The FCC's regulatory authority includes the authority to regulate providers of telecommunications services such as Defendant.

7. Any person who the FCC determines to have willfully or repeatedly failed to comply with the provisions of the Act or any rule, regulation, or order issued by the FCC is liable to the United States for a forfeiture penalty. 47 U.S.C. § 503(b).

8. For purposes of section 503(b), the term "willful" means "the conscious and deliberate commission or omission of [an] act, irrespective of any intent to violate any provision of [the] Act or any rule or regulation of the Commission authorized by [the] Act." 47 U.S.C. § 312(f)(1). The term "repeated" means "the commission or omission of [an] act more than once, or, if such commission or omission is continuous, for more than one day." *Id.* § 312(f)(2).

9. Forfeiture penalties imposed by the FCC are "payable into the Treasury of the United States" and are "recoverable . . . in a civil suit in the name of the United States." 47 U.S.C. § 504(a).

10. As relevant here, the FCC shall not impose a forfeiture penalty against any person unless and until

> (A) the Commission issues a notice of apparent liability, in writing, with respect to such person; (B) such notice has been received by such person, or . . . the Commission has sent such notice to the last known address of such person, by registered or certified mail; and (C) such person is granted an opportunity to show, in writing, within such reasonable period of time as the Commission prescribes by rule or regulation, why no such forfeiture penalty shall be imposed.

47 U.S.C. § 503(b).

11. The practice of "slamming," or changing a subscriber's choice of telephone service provider without that subscriber's knowledge or permission, violates the Act, which prohibits a telecommunications carrier from "submit[ting] or execut[ing] a change in a subscriber's selection of a provider of telephone exchange service or telephone toll service except in accordance with such verification procedures as the Commission shall prescribe." 47 U.S.C. § 258(a).

12. The FCC has prescribed verification procedures in the Act's implementing regulations. 47 C.F.R. § 64.1120(c). The FCC's verification procedures provide that a carrier must verify a carrier change by obtaining (1) written or electronically signed authorization from the subscriber, (2) confirmation from the subscriber via a toll-free number provided exclusively for the purpose of confirming orders, or (3) third-party verification of the subscriber's order confirming the telephone numbers to be switched and the types of services involved. *Id.*

3

13. The Act also declares unlawful any "charge, practice, classification or regulation that is unjust or unreasonable." 47 U.S.C. § 201(b).

14. The Commission has held that the practice of "cramming," or including unauthorized charges and fees on telephone bills, is an "unjust and unreasonable" practice under section 201(b). *E.g.*, *Long Distance Direct, Inc.*, Memorandum Opinion and Order, 15 FCC Rcd 3297, 3302 ¶ 14 (2000).

15. The Commission has adopted "truth-in-billing" rules requiring that "[c]harges contained on telephone bills . . . be accompanied by a brief, clear, non-misleading, plain language description of the service or services rendered," presented in a manner that is "sufficiently clear . . . and specific enough in content so that customers can accurately assess that the services for which they are billed correspond to those that they have requested and received." 47 C.F.R. § 64.2401(b).

**GENERAL FACTUAL ALLEGATIONS**

16. Defendant engaged in slamming, cramming, and unclear and insufficiently specific billing practices.

**Slamming**

17. Defendant engaged in slamming on at least three separate occasions by changing subscribers' long-distance carrier without obtaining proper authorization, confirmation, or verification.

18. All three instances of slamming occurred with the use of third-party verification.

19. In all three cases, Defendant's telemarketers misrepresented Defendant's affiliation with subscribers' then-current carrier.

20. In all three cases, the third-party verification process failed to confirm that subscribers wished to change long-distance carriers and understood they were making such a change.

## Cramming

21. Defendant engaged in at least 28 instances of cramming by placing unauthorized charges and fees on subscribers' telephone bills.

22. In none of the above cases did Defendant obtain, through the third-party verification process or otherwise, subscribers' agreement to purchase "bundled long-distance service," a "casual calling" service through which they could place calls by dialing 10-10 followed by a carrier identification code, directory assistance service, or a calling card.

23. In many of the above cases, Defendant placed unauthorized charges on the telephone bills of subscribers who had instituted a "PIC freeze" on their account to block unauthorized carrier changes. A PIC freeze "prevents a change in a subscriber's preferred carrier selection unless the subscriber gives the carrier from whom the freeze was requested his or her express consent." 47 C.F.R. § 64.1190(a).

24. In some of the cramming instances, Defendant placed the unauthorized charges on subscribers' bills from their local telephone companies. In some instances, Defendant also or instead direct-billed subscribers for unauthorized services.

25. For example, in at least one instance in which an AT&T subscriber's PIC freeze blocked Defendant from supplanting AT&T as the subscriber's preferred carrier, Defendant billed the subscriber service fees, both through AT&T and directly, for what Defendant has characterized as "bundled long distance service."

5

26. In other cases, when subscribers without a PIC freeze initially agreed to use Defendant as their long-distance carrier, but then switched back to their original carriers or otherwise discontinued service from Defendant, Defendant placed unauthorized charges on the subscribers' local telephone bills.

27. In some of those cases, after subscribers contacted their local telephone companies to dispute Defendant's charges and made clear that they no longer wished to receive service from Defendant, Defendant continued to bill such subscribers for unauthorized services directly.

28. For example, in at least one instance in which a subscriber initially agreed to receive service from Defendant but then changed long-distance carriers and telephone numbers, Defendant continued to bill the subscriber, on the subscriber's CenturyLink bill, for charges that included Universal Service Fund, bill statement, carrier cost recovery, and network access fees.

**Failure to Adhere to Truth-in-Billing Rules**

29. Defendant billed subscribers directly and failed to clearly and plainly describe the charges for which it billed on at least four occasions.

30. On all four of those occasions, the bills Defendant issued lacked a brief, clear, non-misleading description of the service or services rendered.

31. On all four of those occasions, Defendant assessed a monthly recurring charge for bundled services that was not described as such on the bills it issued.

32. On all four of those occasions, the bills Defendant issued included a line-item charge for "Long Distance Charges" or "Adjusted Long Distance Charges" but gave no information about what was included in that amount or what time period was covered by the

6

charge. The bills did not identify any long-distance calls made (such as numbers called, dates, or length of calls).

33. On all four of those occasions, the bills Defendant issued were not dated and did not identify the date payment was due.

### FCC Administrative Proceedings

34. On May 5, 2014, the FCC issued a Notice of Apparent Liability ("NAL") based on willful and repeated violation of the Act by slamming and cramming, and on willful and repeated violation of the Commission's truth-in-billing rules.

35. The FCC sent Defendant the NAL by certified mail on May 6, 2014.

36. On or about June 17, 2014, Defendant submitted its response to the NAL.

37. The FCC considered the arguments presented in Defendant's response to the NAL, found them without merit, and, on September 15, 2016, issued a final Forfeiture Order against Defendant.

38. On September 16, 2016, the FCC sent Defendant the Forfeiture Order by certified mail. The FCC received a signed Certified Mail return receipt.

39. To date, Defendant has not paid the monetary forfeiture penalty imposed in the Forfeiture Order.

### COUNT I – UNAUTHORIZED CHANGE OF TELECOMMUNICATIONS SERVICE PROVIDER (47 U.S.C. § 258; 47 C.F.R. § 64.1120)

40. Paragraphs 1 through 39 are hereby incorporated by reference.

41. Defendant willfully and repeatedly violated section 258 of the Act, 47 U.S.C. § 258, and section 64.1120 of the Commission's rules, 47 C.F.R. § 64.1120, by failing to satisfy

governing third-party verification requirements and changing the existing telecommunications service provider of three individuals without their authorization.

42. By reason of the foregoing, Defendant is liable to the United States for a forfeiture penalty pursuant to 47 U.S.C. § 503(b), section 1.80 of the Commission's rules, 47 C.F.R. § 1.80, and the Commission's *Forfeiture Policy Statement and Amendment of Section 1.80 of the Rules to Incorporate the Forfeiture Guidelines*, Report and Order, 12 FCC Rcd 17087 (1997).

## COUNT II – UNAUTHORIZED CHARGES OR FEES (47 U.S.C. § 201(b))

43. Paragraphs 1 through 42 are hereby incorporated by reference.

44. Defendant willfully and repeatedly violated section 201(b) of the Act, 47 U.S.C. § 201(b), by including unauthorized charges and fees on telephone bills.

45. By reason of the foregoing, Defendant is liable to the United States for a forfeiture penalty pursuant to 47 U.S.C. § 503(b), section 1.80 of the Commission's rules, 47 C.F.R. § 1.80, and the Commission's *Forfeiture Policy Statement and Amendment of Section 1.80 of the Rules to Incorporate the Forfeiture Guidelines*, Report and Order, 12 FCC Rcd 17087 (1997).

## COUNT III – FAILURE TO SATISFY TRUTH-IN-BILLING REQUIREMENTS (47 C.F.R. § 64.2401(b))

46. Paragraphs 1 through 45 are hereby incorporated by reference.

47. Defendant willfully and repeatedly violated section 64.2401(b) of the Commission's rules, 47 C.F.R. § 64.2401(b), by issuing telephone bills that lacked "a brief, clear, non-misleading, plain language description of the service or services rendered," and that

were not "sufficiently clear in presentation and specific enough in content" to enable customers to "accurately assess that the services for which they [were] billed correspond[ed] to those that they . . . requested and received."

48. By reason of the foregoing, Defendant is liable to the United States for a forfeiture penalty pursuant to 47 U.S.C. § 503(b), section 1.80 of the Commission's rules, 47 C.F.R. § 1.80, and the Commission's *Forfeiture Policy Statement and Amendment of Section 1.80 of the Rules to Incorporate the Forfeiture Guidelines*, Report and Order, 12 FCC Rcd 17087 (1997).

## CLAIM FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant, as follows:

a. judgment for a monetary forfeiture;

b. interest from the date of judgment;

c. costs incurred by Plaintiff in this action; and

d. such other further relief that the Court may deem just and proper.

The United States of America hereby demands a trial by jury.

DATE: January 30, 2023              Respectfully submitted,

                                COLE FINEGAN
                                UNITED STATES ATTORNEY

By:   /s/ David Moskowitz
       David Moskowitz
       Assistant United States Attorney
       1801 California Street
       Suite 1600
       Denver, CO 80202
       Phone: (303) 454-0100
       E-mail: David.Moskowitz@usdoj.gov

       Attorneys for Plaintiff
       UNITED STATES OF AMERICA